May it please the Court, my name is Benjamin Sanchez. I represent the cross-appellant George Kenney in this matter. This case is one which raises issues of first impression caused, perhaps, by the lack of education of the parties. But in this case, briefly, George Kenney permanently separated from his wife in 1989 and agreed to make the mortgage payments on their jointly held tenancy property. Unbeknownst to George, the IRS several years later assessed taxes against his wife. And 15 years later, the liens came to George's attention when the property was You know, I think we're familiar with the facts. You might want to move to the argument. Yes, Your Honor. Thank you. Several points we'd like to make. Counsel, you pretty much prevailed in the trial court. Did you not, except for this issue of the extinguishing of Donna's interest? Yes, Your Honor. We did we have two points that we'd like to make. Sure. The most important point is that the Court denied interest, even though it recognized and the government conceded that by virtue of the mortgage lenders whose debts he paid on behalf of Donna, his wife. Right. And did I understand you pretty much concede the Benson case is out there so far as the statute of frauds is concerned? Yes, Your Honor. We recognize that. It came up between this time and the trial court, and we brought that to your attention. So but the denial of interest is a factor which we believe was wrongly decided by the Court on the grounds that George had the benefit of appreciation. However, the benefit of appreciation was directly tied to George's own one-half interest in the property. It has nothing to do, it's not legally related to, his payment of Donna's share of that debt. And if he succeeds, as California law makes clear in FLOHO International, to the, it stands in the shoes of the mortgage lenders, then that should carry with it the right to interest, because one of the bundles of rights of a creditor, a secured creditor, is the time value of money, the use of that creditor's money, which passed in succession from those lenders to George when he made the payments. And this is important in this case because the payments extended for a period of 15 years from 1980. What's the total amount in issue there? Excuse me, Your Honor. What is the total amount in issue with respect to the interest payments? Well, the, that is a, that is an issue that the trial court did not decide, Your Honor, and it's because he simply denied interest. We believe that the Court should remand this matter to the district court for a determination of that interest. All right. The second point, if I could interrupt you for just a second. Yes. If you're talking about the bundle of rights theory, let me guess that perhaps Mr. Kenney, when he was paying this mortgage, was also taking a deduction for the interest that he was paying? That is correct, Your Honor. Okay. So if this matter were to be remanded back to the trial court, not only would you have to try to figure out what the applicable interest rate would be that Mr. Kenney would be entitled to, but you'd also have to determine whether there were any offsetting deductions that would have to come off of that, because obviously otherwise he'd be getting a windfall for that interest deduction that he was claiming, right? Well, if he paid, yes, Your Honor, if the Court, he would probably have to file an amended return at this point, or if not an amended return, a return, I think it would probably be under equitable recoupment in the year that he receives the award, because he's a cash-based taxpayer, he would not go back to the earlier years. But, yes, that would be one of the consequences of paying the interest if the amount is adjusted. You're correct. The second point that we'd like to raise with this Court is the denial of attorney fees in part. The Court did hold that George and I will refer to that. We'll move to that. I'm sorry. Yes. Is there a difference between equitable subrogation and the equitable factors that they take into account as opposed to a contractual subrogation? In our opinion, Your Honor, the – there is no distinction between  equitable subrogation and contractual – or equitable factors that would be taken into consideration in a contract situation. We have not argued, Your Honor, at any time that we're entitled to reimbursement, which the government seems to impute to the Court, that the Court was focused upon reimbursing George, and we've always denied that. We believe the Court made no such statement to that effect. And – but in terms of equitable subrogation, the equity considerations seem to exist, whether you are in the position of a joint tenant paying the other tenant's half or a surety situation where subrogation will arise. In that instance, the only distinction I see between a surety situation, which is basically a contract situation, and our situation is that in a formalistic sense, the debt of the lender upon a payment by the surety is extinguished, but the same equitable considerations arise. Here what we're saying is the fact that George experienced appreciation by virtue of his tenancy half interest has no legal relevance and ought not to – ought not to interfere with the recognition that he stepped into the shoes of the creditor. In terms of the award, Your Honors, we have some trepidation in criticizing a district judge or a district court for exercise in his discretion, but we really are saying here that it wasn't really a – simply an abuse or exercise of his discretion, but that this Court has taught that a judge should explain why he is applying the rule – his discretion as he did. We submit to you that the detail of the – of the court's decision to award the tenancy counsel's record of time was as detailed and as discreet as was accepted by this Court in the Huffman case, which is cited in our brief. One of the difficulties here is that there are large swatches of time where it seems that the district court should have recognized it would have been time spent simply getting this case prepared. And I believe that a lawyer should not be disadvantaged by having to split that time in sort of a meat cleaver fashion based upon the percentage factor which the court used. I believe that the court, if it believed that or if it found that – Was that the 5347 or is this – Yes, Your Honor. Basically, the court applied a 5347 percentage on the grounds that we prevailed in terms of the substance of the subrogation issue and that the amount equaled 53 percent. So he – the district court asked counsel to go back and look at his time after the fact, after it was recorded, and allocate, using his best efforts, between the time spent on the lost issue, the Benson issue, and the subrogation issue, which is the 53 percent issue. Now, there's 14 hours that appear to be in a separate category, which I guess the judge did not take into account. Is that correct? That is correct, Your Honor. The judge did not take into account any of the specific discrete groups of time, even though – So your contention would be that you're entitled at least to those, to the 14 hours, plus more? Plus those groups, which, for example, applied to getting the case prepared. For example, the complaint was, I believe, seven hours, and it applied to bringing the facts together, the exhibits together, had nothing to do specifically with either the subrogation theory or the Benson theory, as I'll call it. Now, is that pretty well broken out in the record? Can we find that, or is the problem that it's really not on the table? It's buried someplace. In our papers, Your Honor, we spelled out each discrete group of time. What is the standard of review that we are to apply? Well, the standard of review, Your Honor, is an abuse of discretion. But the – this circuit has also said – has also stated other guidelines or principles, one of which is that the court must explain to the parties why it is declining to award interest or award fees in the exercise of its discretion. And we have no quarrel with that notion. In order to award fees, what do you have to find? In order to award fees, under the Internal Revenue Code, Section 7430, the court must find that the party being awarded has prevailed, and prevailing is defined in part as the party prevailing as to more than half of the amount that's in dispute, which is the 53 percent, which was mentioned earlier. Secondly, the court must find that there was no reasonable justification by the government for its position. And in this instance, the district court correctly found that the issue of subrogation was raised with the Internal Revenue Service prior to litigation, and that it was – it was raised with government's counsel prior to the filing of the motions of summary judgment. In that regard, Your Honor, and I say this with some apology, considerable apology, but I would like to make reference to our reply brief at page 8, where I miscited as court record a document that should have been cited as the supplemental excerpts of record. That deals with the declaration. I wanted to point that out to you. Both the court record and the supplemental excerpts of record refer to the same document, which is the declaration. It's just that the court record is – court record 59, excerpt 59, and not 56. It should have cited the supplemental excerpt. The three references to 56, those should be 59. Is that what you're saying? On page 8. It should be supplemental excerpt of record, S-E-R, yeah, 56. You'll notice that two of them have C-R, should have been S-E-R, and I apologize for that. And instead of 56, it should be 59? No. It should be S-E-R rather than C-R. All right. Okay. In the – the government argues that there's no record of the refusal to discuss. That's – government argues that at page 7 of its reply brief. But if the court does make reference to the fact that the government did discuss this, the court has said in its decision that at trial the government failed to investigate the issue of subrogation. And that is supported by the record. It is supported by the declaration. That's just been alluded to. Excuse me. Can I interrupt you for just a second? Can I ask you a question? Wasn't it your position at the very beginning that the government was not entitled to any of the proceeds from the sale of the house? Yes, Your Honor. On two theories. The first theory is the diminishing interest theory, which the Benson Court basically disposed of by – the Benson Supreme Court of California disposed of prior to – prior to this hearing. So your position was the government's entitled to nothing and the government was taking the position that we're entitled to something? The government was taking the position it was entitled to – yes. It was entitled to all that was in dispute. So how could you have prevailed? Your complaint only requests that you be entitled to it all. Well, the statute provides, Your Honor, that prevailing is – the standard of prevailing is met if you – if the prevailing party wins over half of the amount that's in dispute, which the district court found we satisfied to get 53 percent of the amount in dispute. But if the government hadn't taken any action whatsoever, then your client would have wound up with all of it, even though they weren't equitably entitled to all of it. Isn't that right? Well, Your Honor, the – that's not quite correct. One of the important factors here is how much interest is the plaintiff, George Kenney, entitled to. We believe that interest that has accrued since 1989, when he first took over the payments, up to the date he took title upon the divorce in 1997. But the district court ruled against you on that issue, right? I mean, the district court found you were not entitled to interest, but not on the grounds that he didn't stand in the shoes of the successor, but that because he got paid separately with respect to his own one-half interest. And that's an important point to remember. If you're the holder of a joint title, then you have a legal right to the benefit of equity appreciation. And if you are simply a lender, you're only entitled to what you bargained for, that is, repayment of the principal plus the interest that's on that principal. And we believe that the district court confused the two concepts. Counsel, you're down to about a minute and a half. You might want to reserve. Yes, Your Honor. May it please the Court. Mary Ann Erickson for the United States. I guess I'll start where we kind of left off. I think it's important to keep in mind that equitable subrogation is an equitable remedy. And there is nothing ‑‑ I have searched and have found no cases in which the subrogee was paid interest for the time value of the money between the time the payments were made and the subrogated position was recognized in disbursing with proceeds. In this case, it's no different than any of those cases where we've looked and we've seen that they are ‑‑ yes, they're put in the shoes of the original senior creditor, but that loan, they are not contractually succeeding to the rights as if it hasn't been paid. They are simply given a priority as if, for example, there was a second mortgage on the home, and they were given a second mortgage on the home that had not been paid off, and then they get the principal at the time that the proceeds are disbursed. Yes, there is ‑‑ under an equitable remedy, perhaps the district court had the discretion to give interest, but he chose not to, and I don't believe that was an abuse of his discretion. I don't think it was an abuse of his discretion to cite the fact that Mr. Kenney did enjoy the appreciation on the property during the time period that he was paying his payments. Obviously, he made the payments on his wife's behalf in order to protect his own interest in the property, as well as her continuing one‑half interest in the property. Counsel, the government got about $70,000 in this case. What is your contention as to what the government should have gotten? Well, we believe that the district court, although we conceded the issue of equitable subrogation, we believe that he should have gotten the rights of a senior creditor. And when you have a situation like this where you have proceeds of a sale, and you're then disbursing those proceeds, the senior creditors are paid off first. There was a mortgage that continued on ‑‑ there were two mortgages that continued on the property at the time of sale. They were paid first. It's our contention that the subrogated amount should then have been paid at the same time out of the total amount of the proceeds before what was left over was divided between the co‑owners. The district court chose to do it the other way. It paid the actual mortgage holders off and then divided what was left, which was roughly $150,000, and then paid Mr. Kenny his subrogated amount out of his former wife's half, which greatly diminished the amount that we recovered. Well, what's wrong with that? Well, it allows ‑‑ Excuse me. The court went through all of this and came out with a very logical conclusion. Well, Your Honor, it's our contention that that gave Mr. Kenny more than he was entitled to under a theory of subrogation. Subrogation is not a remedy designed to make the person whole. It's not a reimbursement for every penny that they spent. It's simply an equitable remedy that the government has recognized can put an individual creditor ahead of a federal tax lien. And as you know, not many things can get ahead of a federal tax lien, but under the statute, Congress has mandated that we will recognize these equitable rights to a certain extent. However, if you're really in the shoes of a senior creditor, ordinarily your interests are not intertwined or tangled up with the co‑owner's residual interests, and you're going to ‑‑ the senior creditors are going to want to be paid first, because they want to be sure that they get their money, that they get all their money that they are entitled to under the note or whatever it is that they hold. In this case, Mr. Kenny's equitable subrogation amount was more than he should have been entitled to under that remedy, and it diminished the amount that the United States got because he took it completely out of her half. In other words, divided between the co‑owners and then paid off the senior creditors, logically that doesn't flow, and I haven't been able to find any other subrogation case where that calculation has been done. And so, Mr. Kenny's equitable subrogation amount is $166,000, right? Yes, sir. Why shouldn't he get that back first from the entire sale price and then divide the balance between the two? Well, that's exactly what we argued should have been done, Your Honor. Well, no. $166,000 should be deducted from the total of the $307,000. That would leave $70,000 left to be divided because of the balance. The difference between $307,000 and $166,000 is $140,000. Half of that is $70,000. And that works out exactly the same way as the district court did when it just deducted the $83,000 from that share. I'm not sure I'm understanding. All right. Why wouldn't the total of $166,000, the amount that he advanced, be deducted from the $307,000 before it's divided between the two parts? Well, actually, I believe that the amount he paid on her behalf was only half of that amount, isn't it? No. He paid a total of $166,000. On behalf of his former wife? No. You mean the amount that he paid off his mortgages? The total amount that was paid out of the four keeping the property together was $166,000. Then you deduct that from the $307,000, and it leaves $140,000 to be divided. Well, I believe, Your Honor, that the problem with that is that only half of that he paid on his own behalf, half of it he paid on behalf of his wife. It was only some $80,000 or so that is the amount to which he's entitled to be subrogated. If you only deduct the $83,000 from that, you're giving the benefit to the wife of one-half of his share. See, this is exactly this is what was done in a California case. Southern Adjustment Bureau v. Nelson. They said when a co-tenant advances from his own pocket to preserve a common estate, his investment in the property increases by the entire amount advanced. Upon sale of the estate, he is entitled to be reimbursed his entire investment before the balance is equally divided. Well, Your Honor, I don't know all the facts of that case, but I don't believe it's the same situation that we have here. In this case, no one's arguing that he was entitled to get that entire $166,000 before the government got anything. What we've agreed to is that he's subrogated to the half, to the $80,000 that he paid on her behalf because it was her half of the house. And taking it that way, what the district court did was to deduct the $83,000 from her half. That's right. And what the government believes is that because he was in the shoes of a senior creditor, the senior creditor should be paid out of the entire amount of the proceeds first before it's divided between the co-tenants. Well, that sure doesn't correspond with the California authority, nor the case that you've cited either in the briefs. Which one? The Flojo case that Mr. Kenney's relying on? We believe that case is an opposite because it involves. The Veedeus case. Oh, the Veedeus. Well, that was an inequitable subrogation case, actually. Well, but that one, you were citing for your position. And in that case, they did deduct the entire thing from the total amount that had been received. I believe we cited the Veedeus case for the proposition that there was no interest paid. And it was not. That's true. You cited it for that. But if you read on in the Veedeus case, you find that the total amount that the wife had paid there was deducted before they divided it. Well, as I said before, that case did not involve equitable subrogation. That was the case in which she had other rights that they called they said they were akin to subrogation. Similar, but not the same. All right. Then what is equitable about giving this person only one-half of the amount? I believe it's more equitable than giving him nothing, which would otherwise be the case. It's true. It certainly is that. But why is it more equitable than giving him the amount that he paid? Well, he got credit for the amount that he paid on his own behalf already because that much of the mortgage had been paid off. So he didn't have to do the proceeds for that much more when it was sold. I don't know how else to answer your question. As I recall, the $307,000 represented the net proceeds. Yes, sir. Including any mortgage balance there was at that point. Correct. Okay. Why don't we just split the $307,000 right down the middle, $153,000 each, and then apply the $86,000 offset off each. What's wrong with that? Well, we believe it's unfair because he gets to jump ahead of us to a greater extent than he would ordinarily. Yeah, but half of it is his. Well, his by what definition? Only because you think it seems fair or because there's a law that says it's his. I mean, if you look at the other equitable subrogation cases that I have seen anyway, they're paid out of the proceeds and then it's split. I don't know how else. I mean, we obviously disagree on this point. I haven't taken a position. I'm just asking you a question. I don't know what else to say about this point. I would like to say that as far as the attorneys go. What I'm trying to sort out here is the implications of where you make this allocation. If you do it at the top tier, there's a pot of money, $307,000. And the tenants, the property is owned jointly. So 50 percent goes to each. I mean, at that level. Right. So there's a, each side is entitled to $153,000. Why don't, I guess where I'm having problems. What is wrong with offsetting the 153 by the 86 on each side? What's wrong with that? Well, look at it this way. If he wasn't a subrogate, if it wasn't a subrogation situation, if he was a senior creditor, do you understand why I'm saying that he would want to be paid first before it's divided and not paid out of one half or the other? But what would happen if, what would happen if, in fact, that debt had remained outstanding, that $166,000 was still outstanding if it hadn't been paid? Well, I assume the bank would have foreclosed on the property. No. But what would be the effect of that? What would happen is he would take your $307,000. He'd subtract $166,000 that would be owed to the bank. Right. Right. And then you'd divide the difference. Right.  By half. Exactly. Right. And the United States would have gotten more under that scenario. No. No. No. Don't they wind up getting the same? They wouldn't have paid any of the mortgage. Correct. If the mortgage just hadn't been paid, period, it was still outstanding, $166,000 owing. Assume the $307,000 is the result of the foreclosure. That's what's left. Right. Okay. Then you divide it in half and we get her half. Well, you take the mortgage. The mortgage people are going to take their $166,000 first. It would have been more money, though, because if they hadn't paid those mortgages down, then there would be more proceeds. Well, what Judge Bonetus is saying, suppose that the situation where the mortgage or still the mortgagees still had their mortgage on the property. Right. Right. And it gets sold. The $166,000 gets paid to the mortgagees, right? Right. All right. That leaves then a balance of $153,000 to be divided to each. And then you split that in half, right? Right. Whatever's left over, you split in half after the creditors are paid off. Which gets you the $70,000 net to the IRS, which is exactly what this trial judge found. Well, but that's not what happened. I mean, you know, they're a bank. They're entitled to their money plus interest. I don't see how he was entitled to any interest. Why shouldn't he be entitled to the same amount that the bank was? He took it over. He doesn't say he gets interest. It's just that he gets the principal. The remedy that we're talking about here doesn't say anything about interest. Oh, that he doesn't get the interest that he advanced? Well, yes. He gets the interest that he paid, but he doesn't get interest on the use of his money. No, we're not talking about that interest. We're talking about the interest that he paid to the banks for the $166,000. We agree that he subrogated to that amount. We just don't agree on how it's calculated. If you can find another case where they did it that way, you have better research skills than I do, which is probably true anyway. I would like to say to you. Let me ask you a question, if you don't mind. Let me turn to perhaps a more minor issue, and that's this issue of the substantial justification. Yes. Mr. Kenney originally took the position that the IRS is entitled to nothing, and the IRS took the position that we're entitled to something. In the end, who was closer to being right, Mr. Kenney or the government? Well, if you look at the dollar amounts, he got 53% under the way it was calculated. If you agree with me, and likely scenario that you agree with me on this point, and we get more money, then he won't get any attorney's fees because he will not get up to 50%. Was the government's position that you were entitled to all of that one half that Mrs. Kenney – I'm sorry, was it Donna? Mrs. Kenney. Yes. When are you asking? From the beginning. From the beginning. At the beginning, we thought we were entitled to all of it, yes. Okay. Mr. Kenney did not clearly raise the issue of subrogation until the – right before or actually at the time that he filed his motion for summary judgment. Yes, it's true. There is something in the record in June of 2002. He sent a letter to the IRS that mentioned – it says, quote, a right of subrogation so as to be reimbursed from the proceeds of sale. He didn't say equitable subrogation. He cited that Vita's case, which was not an equitable subrogation case. And the government did not – it was – let's just say it wasn't clear. It wasn't clear. Going back, if you go back and read the pleadings, you'll see that it's not clear that he was raising equitable subrogation as a remedy. And so between that time and the time he filed his motion for summary judgment, which was two years later, he never brought it up again. There's nothing in the record – there were a million chances. I have eight different documents here I can cite to you that went back and forth between the parties that had no mention of equitable subrogation. He didn't mention it in the settlement discussions. He didn't put it in his complaint. So there's nowhere where Mr. Kenney said, look, we agree. We're only entitled to $80,000. We'll give you $70,000. There's nothing like that anywhere in the record. No, there's not. Okay. And there's nothing where the government said, no, you're not entitled to equitable subrogation. We never said that because we never really recognized that as a theory that he was advancing until it got to the motion for summary judgment. And then we immediately, once it was articulated clearly and the trial attorney looked at it and said – he did some research and he said, okay, I see that. We conceded it immediately. I don't really see how our position was not substantially justified, given those circumstances. Counsel, you heard the discussion I had with Mr. Sanchez about breaking down the hours in the litigation side, the 14 hours as an element. Do you have any comment on that? Yes. I think that the way that the billing records were presented to the court, it's very difficult to see what the rationale was that Mr. Kenney's counsel used when he redacted the records. I think that the court was extremely generous and fair to Mr. Kenney in granting him the percentage of attorney's fees and that he certainly is not entitled to any more than that amount because the records simply are not clear. Yes, there are a few things you can look at that, yes, obviously, he spent some time on the equitable subrogation issue when he was drafting the motion for summary judgment, although that was, again, not a huge part of it. But he is – I honestly tried and could not find any rationale that explained how he redacted those records. He put some things in there, such as the complaint. It didn't mention equitable subrogation whatsoever. And he seemed to think he deserved all that time, credit for all that time. And other things he said were not susceptible to allocation. Some things are. Well, it was, you know, obviously, he couldn't have been expected perhaps to keep track of that as he was going through. But because of that, because of the state of the record, I think it was extremely fair to give him a percentage, and it was certainly not an abuse of the judge's discretion. Would the – there are two concepts in order for there to be an attorney's fee award. The first, the party has to prevail. Would you concede that if the attorney got 83,000 and the government got 70,000, that that prevailing? Yes. We're not arguing that he didn't substantially prevail as to the amount. Okay. So the next one is whether the government was substantially justified in taking the position that it did. Yes, sir. Okay. Anything further? No. I'd like to reserve my last minute for rebuttal, if I may. We have cross appeals in this case, so. Yes, but we're not breaking it down that way. We're not? No. Use your time now if you want to say something, because we've already gotten into the cross appeal. Okay. If there are no further questions. Question? Thank you. I guess the only thing is if a lot of different figures were used, I think the stipulation is that the mortgage payments were 166,826, whereas at one point in the earlier summary judgment, the court used 167,000, and the blue brief continues to use 167,000. Yet I think the stipulation was for 166,000, right? You used the correct one. I hope so. I believe it's a little bit of confusion with the numbers, because let's see. What I have here is that the 307,244 where the proceeds is divided in half is 156,357, but the amount that was actually deposited with the court was somewhat more than that because their interest had accrued during the time it was held by the title company. That's the second problem I was going to raise. Yeah. Because that includes some interest that while it was in escrow, before it was deposited. Yes. When it got to the court, was it deposited interest somewhere? Your Honor, I don't know. It's being held by the district court, and I don't really know what the details are of that. What I was asking about was the amount of the mortgage payments. Yeah. I know there was some discrepancy between what the court found and what was in the stipulation. He took it from the record. It's a small amount. It's very narrow, either 166 or 167-something, right? The parties are in agreement. It will go with what the court had found. Okay. It found both. It found one of them with the summary judgment and the other one with the resolving the motion. That's all right. We'll sort that out. Mr. Sanchez, you have a little bit of reserve time. Only one comment, Your Honors, and that is, again, to make reference to government counsel's argument that this matter was not raised. Clearly, it was raised. The court found it was raised. The declaration to which I have alluded at page 8 of the declaration provides the details which recount what was discussed with government's counsel prior to the filing of the motions for summary judgment. The matter could have been settled right then and there had government counsel been willing to even discuss the issue of subrogation. But government counsel said the issue had not been raised and it was a new issue, and therefore he was unwilling to discuss the matter, whereas, in fact, the court found that the matter had been raised administratively with the Internal Revenue Service at two different levels, both at the field level with the input of legal counsel for the IRS, as well as the appeals division, which summarily denied it. The document which alludes at the administrative level to the issue of subrogation was the very first document which George Kenney's counsel sent to the IRS. Government counsel simply couldn't have missed that document because it was the very first document. But the complaint never made that allegation. No, Your Honor, it didn't. The complaint ---- The litigation itself? Well, the complaint, I believe, is the statement of facts that give rise to the claim. The theories are spun out of those facts, spun out of the stipulation of facts. We submit, Your Honor, that the specific theory of subrogation versus the Benson theory of reimbursement or any other theory does not have to be spelled out in the complaint, but it's part of the winnowing process, which I would think a court would want from the parties to come to grips with what are the issues at stake, what should we bring to the attention of the court. And it's not proper, we submit, for government counsel, especially in federal district court litigation as opposed to refund litigation, for example, to state this is a new theory. I mean, you hear a theory, then you ought to listen to it. And had he done so, this matter would have been disposed of without taking your time here. Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: Hug, O'scannlain, Benitez